### ALDER v. CHAPMAN.

No. 11415—Opinion Filed June 19, 1923.

Rehearing Denied July 9, 1923.

1. **Damages — Detention of Chattels — Amount of Damages to Lienholder.**
   One having a mere lien on personal property cannot recover damages for the detention thereof for a greater sum than the amount claimed, together with cost, for which the property is held to secure, as against the rightful owner of the property, or other valid lienholders.

2. **Usury—Statute—Applicability.**
   Section 4, ch. 20, page 27, Sess. Laws 1916, being section 5101, ch. 32, art. 6, page 1976, Comp. Stats. 1921, relates to contracts for the loan of money and particularly to the banking business, and does not apply to contracts of sale, barter, and exchange, nor to contracts for service or hire.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action in replevin by W. L. Chapman against Annie Alder. From the judgment, defendant brings error. Affirmed.

A. M. Baldwin, for plaintiff in error.

Joe M. Adams, for defendant in error.

Opinion by JONES, C. This action was commenced by defendant in error, plaintiff below, by petition filed in the district court of Pottawatomie county, on the 31st day of May, A. D. 1919, and the statutory affidavit and bond for a writ of replevin were filed at the time and with the petition, and the writ of replevin issued thereunder.

The petition alleges ownership of the property, the value of same, the value of the use of the same, and the usual allegations of un-

lawful detention and the damages sustained by reason of such detention, the demand for possession, and concludes with the prayer that plaintiff have judgment for the recovery of the value thereof at $750 and $5 per day as damages for the detention thereof during such detention.

The writ of replevin was duly issued on the 31st day of May, 1919, delivered to the sheriff of said county, and by him on said date executed by taking possession of the property described, and after holding same for the period of 24 hours and no redelivery bond being given, he delivered same to plaintiff.

On the 19th day of June, A. D. 1919, the plaintiff in error, defendant below, filed her separate answer and cross-petition in said court. The said answer consists of a general denial, except that it admits the usable value of the property involved to be $5 per day. And in the cross-petition, plaintiff in error, defendant below, alleges that she is entitled to the possession of said property under and by virtue of a special ownership therein created and existing by reason of a certain written instrument executed by one James Burdine to her in which, in substance, she alleges:

"She sold the greater part of the furniture in the rooming house at 207 1-2 East Main street, to James Burdine for the sum of $150, * * * retaining a lien on said furniture and fixtures for the sum of $150 as more fully shown by said sales contract * * * attached and marked 'Exhibit A.' That said Burdine paid on said contract the sum of $60 and that there is now due and owing thereon the sum of $90, and 'This answering defendant claims a special ownership in and right to possession of said furniture and fixtures by virtue of her sales contract.' "

The cross-petition alleges that under a verbal agreement the said James Burdine turned over to defendant the posssssion of said furniture and fixtures on or about the 8th day of June, 1919. The last paragraph of the cross-petition alleges, in substance:

"That said replevin suit was wrongful and malicious, and that she had been damaged in the sum of $500 actual damages, for which amount she prays judgment, together with the value of the property, alleged to be $750, and for $500 exemplary damages."

The case was tried to a jury on the 14th day of November, 1918, and a verdict returned in favor of the defendant for the possession of the property, and in case a return could not be had, for the sum of $90, the value of her special interest in said property.

The facts as above set forth were substantially proven by the evidence in the case, and establish the fact that the defendant in error, Chapman, had an interest in said property by reason of a chattel mortgage covering the same, given to secure certain notes held by said Chapman, and further discloses that he had foreclosed said mortgage, according to the terms thereof, and was the purchaser at said mortgage sale, and left same in the possession of plaintiff in error, and the plaintiff in error also had an interest in said property by reason of her conditional sale of the property in controversy, for which she was to receive the sum of $150; that she had received $60 of the purchase price, leaving a balance of $90 due on said property, for which amount she obtained judgment in the trial court below.

We find that the matter was fairly submitted to the jury under proper instructions, and that the verdict of the jury, and the judgment of the court based thereon finding for the plaintiff in error, the defendant below, in the sum of $90 was a correct judgment in the matter.

Section 2877, Rev. Laws 1910, being section 6201, Comp. Stats. 1921, provides:

"That one having a mere lien on personal property cannot recover greater damages for its conversion from one having a right thereto superior to his after his lien is discharged, than the amount secured by the lien, and the compensation allowed by the second preceding section for loss of time and expense."

Section 172, C. J., vol. 6, page 1166, is as follows:

"The bailor and bailee both having an interest in the property, the same act of a third party may entitle either the bailor or the bailee to sue, but a recovery by either party of the entire damages to the property will be a full satisfaction and a bar to any subsequent suit by the other."

"No proposition can be more clear than that either the bailor or the bailee of a chattel may maintain an action in respect of it against a wrongdoer; the latter by virtue of his possession, the former by reason of his property."

The defendant in error, in the conclusion of his brief, urges that this case should be dismissed, and the judgment of the defendant below, plaintiff in error herein, should be declared null and void, for the reason that the court below had no jurisdiction of the case, and in support of his contention cites section 4, of chap. 20, page 27, Sess. Laws 1916, being section 5101, ch. 32 art. 6, Comp. Stats. 1921:

"No suit upon any contract entered into after the passage and approval of this act, of $300 or less, or an action in replevin or to foreclose any mortgage or lien given as security therefor, shall be maintained in the courts of this state, and no petition or bill of particulars shall be filed or any process issued where the amount of such sum is $300 or less, unless at the time of filing such suit, there shall be filed with such bill of particulars or petition, an affidavit setting forth that the contract sued on was not made in violation of the interest laws of this state, and that a greater rate of interest than 10 per cent. has not been charged, reserved, or collected on such contract or contracts sued upon; provided that if upon the trial of any such suit brought upon any note, bill or other evidence of indebtedness of $300 or less, or in replevin or for the foreclosure of any lien given to secure the name, it shall be shown by the evidence that the contract sued upon is usurious and made in violation of the interest laws of this state, said suit shall be dismissed at the cost of the plaintiff."

This section is found in Senate Bill No. 3, entitled "An Act relating to the loaning of money, etc." Chapter 20 is entitled "Banks and Banking—Usury." Section 1 of the act defines usury, provides a penalty and forfeiture. Section 2 deals with the liquidation of usurious contracts for the loan of money. Section 3 provides a penalty for transferring usurious contracts. Section 4 is the one involved in this case. Section 5 provides that banking officials shall report to the Bank Commissioner, showing rate of interest charged, and for the cancellation of bank charters, when found to willfully charge usury.

It is clear, when viewing the act as a whole, that the Legislature had in mind contracts pertaining to the loan of money, and did not intend that it should be a law of general application, applying to contracts of sale, barter, and exchange, and for services rendered, and to contracts for hire. Certainly no one would contend that a farm hand or day laborer would be required to make such an affidavit as a prerequisite to the institution of a suit to recover his daily wage.

We therefore hold that the section relied on by defendant in error does not apply in this character of contracts, and finding no error in the proceedings had, the verdict of the jury, and judgment of the court, the judgment is in all things affirmed.

By the Court: It is so ordered.